IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| KEVIN OMAR MATÍAS-ROSSELLÓ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> EPOCH LLC; FOT INVESTMENTS LLC D/B/A/ DOMINO'S PIZZA; AND CLUTCH CONSULTING, LLC, <br><br> Defendants. | CIV. NO.: 19-1307 (SCC) |

**OMNIBUS OPINION AND ORDER**

Before the Court are Defendants Epoch LLC ("Epoch")
and FOT Investments LLC's[1] ("FOT") Motion for Summary
Judgment, Docket No. 37, and Motion to Dismiss Class Action
Claims, Docket No. 38. For the reasons set forth below, the
Motion for Summary Judgment and the Motion to Dismiss are
**GRANTED.**

---

[1] D/b/a Domino's Pizza.

## I.  Background

### A.  The Complaint

Plaintiff Kevin Omar Matías-Rosselló ("Plaintiff Matías-Rosselló") filed this putative collective and class action suit against Epoch, FOT and Clutch Consulting, LLC ("Clutch") for alleged violations to the Fair Labor Standards Act ("FLSA") and unjust enrichment under Puerto Rico law. *See* Docket No. 1. At the time of the filing of this suit, Plaintiff Matías-Rosselló was employed by FOT and worked in several of its Domino's Pizza stores as a delivery driver.

There is considerable overlap between Counts I and II of the Complaint since both counts allege that Defendants failed to pay Plaintiff Matías-Rosselló and those current and former similarly situated employees the minimum hourly wage set forth in 29 U.S.C. § 206(a) of the FLSA.[2] In Count I, Plaintiff Matías-Rosselló appears to argue that given his status as a "tipped employee," if Defendants were going to benefit from the tip credit exception, they had to have notified him of this.

---

[2] Given this overlap, in its analysis, the Court will consider Counts I and II jointly.

But since no notification was received regarding the taking of a tip credit, Defendants had to ensure that Plaintiff Matías-Rosselló was paid the minimum wage required by the FLSA, which, he alleges, they ultimately did not do. Count II alleges that Defendants violated the FLSA's anti-kickback regulation codified at 29 C.F.R. § 531.35 because they failed to adequately reimburse him for expenses related to the use of his personal vehicle during his delivery runs such that Defendants were, in essence, offsetting their business costs onto its employees. According to Plaintiff Matías-Rosselló, Defendants used a $1 per delivery reimbursement method that was well below the IRS' business standard mileage reimbursement rate, and therefore did not allow him to receive his wages "free and clear," since he had to incur expenses pertaining to the upkeep and functioning of his vehicle. Lastly, Count III invokes this Court's supplemental jurisdiction to advance an unjust enrichment claim under Puerto Rico law.

### B. The Hearing on Motions and Supplemental Briefing

On May 20, 2021, Defendants challenged Plaintiff Matías-Rosselló's claims by filing the pending Motion for Summary Judgment, Docket No. 37, and Motion to Dismiss, Docket No. 38. Plaintiff Matías-Rosselló separately opposed them, Docket No. 44 (Opposition to Motion for Summary Judgment) and Docket No. 46 (Opposition to Motion to Dismiss) and requested that a hearing be held to discuss both motions. Defendants filed replies. Docket No. 51 (Reply in Support of Motion for Summary Judgment) and Docket No. 53 (Reply in Support of Motion to Dismiss). The Court granted Plaintiff Matías-Rosselló's request for a hearing on both motions, which took place on November 1, 2021 (the "Hearing"). Docket Nos. 59 and 62. At the Hearing, the Court granted Plaintiff Matías-Rosselló fourteen (14) days to file a motion to supplement his oppositions to the Motion for Summary Judgment and the Motion to Dismiss. Docket No. 62. Plaintiff Matías-Rosselló filed that motion, Docket No. 63, and Defendants filed a timely opposition, Docket No. 64.

## C. Housekeeping Matters

Prior to diving into the merits of the pending motions, the Court must address several housekeeping matters pertaining to Epoch and Clutch. These matters were specifically raised in the Motion for Summary Judgment whereby separate requests for the dismissal of all claims against Epoch and Clutch were advanced. *See* Docket No. 37 at pgs. 2, 5-6 and Docket No. 51 at ¶ 11. The first argument regarding these dismissals stands for the proposition that none of Plaintiff Matías-Rosselló's claims can attach to Epoch because he was never employed by that corporate entity. Docket No. 37 at pgs. 5-6. The second argument is a procedural argument stating that service of process upon Clutch was never perfected in accordance with Federal Rule of Civil Procedure 4. *See* Docket No. 51 at ¶ 11. These specific requests for dismissal were discussed during the Hearing. There, the Parties expressed that dismissal of those defendants was in fact warranted for the very same reasons advanced in the

Motion for Summary Judgment.[3] The Court agrees.

Accordingly, the Court hereby **DIMISSES WITHOUT PREJUDICE** all claims as to Clutch and **DISMISSES WITH PREJUDICE** all claims as to Epoch.[4] The Court now turns to Defendant FOT's Motion for Summary Judgment.

## II. Defendant FOT's Motion for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is proper under Rule 56, when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a). The movant bears the initial burden of establishing "the absence of a genuine issue

---

[3] Plaintiff Matías-Rosselló also expressed his acquiescence to the dismissal of Epoch in his Opposition to the Motion for Summary Judgment. *See* Docket No. 44 at pg. 10 (stating that "Plaintiff does not oppose summary judgment as to Epoch.").

[4] As noted at the beginning of this Omnibus Opinion and Order, the pending Motion for Summary Judgment and Motion to Dismiss were filed by Defendants Epoch and FOT. However, because the Court has dismissed all claims against Clutch and Epoch, Defendant FOT remains the sole movant as far as the pending motions are concerned. So from this point forward, the Court will only refer to Defendant FOT when discussing those motions.

of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But after the movant makes that initial showing, to overcome a motion for summary judgment, the non-movant must demonstrate "through submissions of evidentiary quality, that a trialworthy issue persists." *See Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006). It is worth noting, however, that when the non-movant bears the ultimate burden of proof at trial, the non-movant cannot "rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995). Further, while the Court draws all reasonable inferences from the record in the light most favorable to the non-movant, in doing so, it casts aside and ignores all "conclusory allegations, improbable inferences, and unsupported speculation." *See García-García v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (internal quotations and citations omitted).

**B.  The Undisputed Facts ("UF")[5]**

In order to make its factual findings, the Court considered Defendant FOT's Statement of Material Facts ("DSMF") at Docket No. 37-1, Plaintiff's Supporting Statement of Facts ("PSMF") at Docket No. 44-3, Plaintiffs' Additional Facts ("PASMF") at Docket No. 44-3, and Defendant FOT's Reply Statements to Plaintiff's Supporting Statements of Uncontested Facts and Additional Facts ("DRSMF") at Docket No. 52, in tandem with the documentation cited and attached thereto in accordance with Local Rule 56(e). The Court finds that the following facts are undisputed:

1. On February 15, 2017, Plaintiff Matías-Rosselló executed a part-time employment agreement (the "Agreement") with FOT to work as a delivery driver. DSMF ¶¶ 5-6; Docket Nos. 37-5 and 37-6 at pg. 2.

---

[5] The Court did not consider as facts Plaintiff Matías-Rosselló's PASMF ¶¶ 26-27, 30 and 34, for they entailed legal arguments or conclusions that the Court need not consider as facts.

2. Since February 27, 2017, FOT has been a sub-
franchise of Domino's Pizza. DSMF ¶ 4; Docket No.
37-4 at pgs. 3-4.

3. Pursuant to the Agreement, Plaintiff Matías-
Rosselló began working for FOT as a delivery
driver on February 27, 2017. DSMF ¶ 5; Docket Nos.
37-5 and 37-6 at pg. 2.

4. His principal job post was in FOT's Domino's Pizza
store located in Mayagüez (the "Mayagüez Store"),
however, he occasionally worked at the stores
located in Ponce (the "Ponce Store") and Yauco (the
"Yauco Store") if those stores were down a driver.
DSMF ¶¶ 7-8; Docket No. 37-7 at pg. 37, lines 12-
25 and pg. 38, line 1.

5. For his work as a part-time delivery driver, Plaintiff
Matías-Rosselló was paid $7.25 per hour, in
addition to $1.00 per delivery. DSMF ¶ 9[6]; Docket

---

[6] Plaintiff Matías-Rosselló "disagreed" with this proposed fact. *See* PSMF
¶ 9(a). But he did not support his "disagreement" with a record citation
pursuant to Local Rules 56(c) and (e). Therefore, the Court admits the
proposed fact at DSMF ¶ 9.

No. 37-7 at pg. 55, lines 1-6, pg. 64, lines 10-17 and pg. 65, lines 12-20.

6.  Plaintiff Matías-Rosselló also received tips from clients. DSMF ¶ 13; Docket No. 37-7 at pg. 72, lines 5-9.

7.  Plaintiff Matías-Rosselló, however, did not have to report the client tips that he received to FOT, nor did he have to share those tips with fellow drivers. DSMF ¶¶ 10, 12; Docket No. 37-7 at pg. 83, lines 11-20.

8.  Thus, FOT did not retain the tips earned by Plaintiff Matías-Rosselló nor take a tip credit against his hourly wage. DSMF ¶ 11; Docket No. 37-7 at pg. 83, lines 11-20.

9.  Plaintiff Matías-Rosselló did not maintain a record of the tips that he received. DSMF ¶ 13; Docket No. 37-7 at pg. 72, lines 10-17.

10. Between March 10, 2017 and December 29, 2017, FOT paid Plaintiff Matías-Rosselló a total of $8,858.35 for 1,159.10 hours worked at a rate of

$7.25 per hour, plus 3.09 hours' time and a half, 48.10 hours for meal penalty, and 10 vacation hours. DSMF ¶ 14; Docket No. 37-8.

11. Between January 5, 2018 and December 28, 2018, FOT paid Plaintiff Matías-Rosselló a total of $11,768.62 for 1,439.56 hours worked at the rate of $7.25 per hour, plus 12.76 hours' time and a half, 51.79 hours for meal penalty, 24 vacation hours, 6 sick hours, and a bonus of $600.00. DSMF ¶ 15; Docket No. 37-9.

12. Between January 4, 2019 and October 11, 2019, FOT paid Plaintiff Matías-Rosselló a total of $5,695.68 for 719.94 hours worked at the rate of $7.25 per hour, plus 1.73 hours' time and a half, 5.83 hours for meal penalty, and 57.25 vacation hours. DSMF ¶ 16; Docket No. 37-9.

13. FOT paid Plaintiff Matías-Rosselló a total of: (1) $3,187.00 for the 3,126 deliveries that he made while working at the Mayagüez Store; (2) $93.00 for the 74 deliveries that he made while working at the

Ponce Store; (3) and $173.00 for 170 deliveries that he made while working at the Yauco Store. DSMF ¶¶ 17-19; Docket Nos. 37-11, 37-13.

14. Plaintiff Matías-Rosselló does not have records of his incurred vehicle expenses while making deliveries, such as those pertaining to tires, brakes and gas. DSMF ¶ 23; Docket No. 37-7.

15. Plaintiff Matías-Rosselló does not have records of the distances that he covered while making deliveries. DSMF ¶ 24; Docket No. 37-7.

16. On October 6, 2019, Plaintiff Matías-Rosselló submitted his resignation letter to FOT and ceased working for the company. DSMF ¶ 20; Docket No. 37-14.

## C. Analysis

### a. Counts I and II: Failure to Pay Minimum Wage

The FLSA mandates that employers pay employees the minimum wage established in § 206. *See* 29 U.S.C. § 206. But this general rule has exceptions. And pertinent to our discussion is the tip credit exception found in § 203(m) of the

FLSA. 29 U.S.C. § 203(m); 29 C.F.R. § 531.59. This exception allows an employer to pay a wage below § 206's minimum wage "and count the tips received [by the employee] to make up the difference between the hourly wage paid and the prevailing hourly minimum wage rate." *Pérez v. Lorraine Enter., Inc.,* 769 F.3d 23, 27 (1st Cir. 2014). The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *See* 29 U.S.C. § 203(t).  To reap the benefits of this exception, "the employer must inform the employee in advance that it intends to count a portion of the employee's tips toward the required minimum wage." *Lorraine Enter., Inc.,* 769 F.3d at 27; *see also Martin v. Tango's Rest., Inc.,* 969 F.2d 1319, 1322 (1st Cir. 1992) (explaining that § 203(m) requires "at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations.").

In his Opposition to FOT's Motion for Summary Judgment, Plaintiff Matías-Rosselló argues that even though he was a "tipped employee" earning more than $30 a month

in tips, FOT did not inform him of "any tip credit[.]" *See* Docket No. 44 at pg. 16. He adds that "[h]ad [FOT] taken a tip credit towards car expenses, [FOT] would have had to inform" him of it. *See* Docket No. 44 at pg. 17. Plaintiff Matías-Rosselló's argument here is hard to follow and ultimately appears to conflate the argument regarding the purported inadequate reimbursement of vehicle expenses, which allegedly resulted in a minimum wage violation. From what the Court was able to unpack, Plaintiff Matías-Rosselló appears to reason that he was not paid the minimum wage and if the tip credit exception applied towards car expenses, he should have been informed of it.

Plaintiff Matías-Rosselló sustains that he was a "tipped employee" because in a week he could make roughly $10.00 in tips. *See* Docket No. 44 at pg. 17; *see also* Docket No. 37-7 at pg. 72, lines 21-23. That is, he represents that he made over $30.00 in tips per month. *See* Docket No. 44 at pg. 17. But as the Uncontested Facts show, he admitted that he does not have a record of the amount in tips that he received each week. *See* UF ¶ 9. Even if the Court were to consider Plaintiff

Matías-Rosselló a "tipped employee," that alone is not enough to say that the tip credit exception is at play here.

The Uncontested Facts in this case reveal that pursuant to the Agreement, Plaintiff Matías-Rosselló was paid $7.25 per hour, in accordance with the minimum wage set forth in § 206. *See* UF ¶ 5. Moreover, a tip credit does not involve the interplay between an employee's wages and his expenses as Plaintiff Matías-Rosselló's understanding of the tip credit suggests. *See* Docket No. 44 at pg. 17 (stating that "[h]ad [FOT] taken a tip credit towards car expenses, [FOT] would have had to inform" Plaintiff Matías-Rosselló.). Instead, as defined above, a tip credit is taken when an employer pays an employee a wage below the FLSA's minimum wage, provided it then makes up the difference with the tips earned by the employee. Lastly, Plaintiff Matías-Rosselló has admitted that FOT did not take a tip credit against his hourly rate. *See* UF ¶ 8; Docket No. 44-3 at ¶ 11(a). Accordingly, since FOT did not take a tip credit, Plaintiff Matías-Rosselló's allegation that Defendant FOT did not satisfy the tip credit exception requirements and consequently did not pay him the

FLSA's mandated minimum wage is misplaced.

Plaintiff Matías-Rosselló's overarching claim concerning FOT's purported failure to satisfy the FLSA's minimum wage requirement hinges on an alleged violation of the FLSA's anti-kickback regulation. Codified at 29 C.F.R. § 531.35, that regulation states that:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid [to] him under the Act. See also in this

connection, § 531.32(c).
29 C.F.R. § 531.35.

Plaintiff Matías-Rosselló avers that he did not receive his wages "free and clear" because FOT failed to adequately reimburse him for the expenses that he incurred by using his personal vehicle during his delivery runs. *See* Docket No. 44 at pg. 16. He adds that because his personal vehicle is a tool of the trade, FOT was obligated to reimburse him for the expenses incurred while on the clock and failure to reimburse him would result in his compensation falling below the minimum wage. *Id.* Further, he contends that FOT should have used the IRS' business standard mileage rate reimbursement method instead of the $1 per delivery method. *Id.* at pgs. 11-15.

Plaintiff Matías-Rosselló bears the burden of showing that he was not paid the mandatory minimum wage. *See Pruell v. Caritas Christi,* 678 F.3d 10, 12 (1st Cir. 2012); *see also Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946). Because Plaintiff Matías-Rosselló bears that burden, even though he is the non-movant here, he is still tasked with directing the

Court to evidence that will support his case. *See Celotex Corp.,* 477 U.S. at 322-23 (explaining that, if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the movant is "entitled to a judgment as a matter of law").  And FOT has picked up on this, for its Motion for Summary Judgment is premised on Plaintiff Matías-Rosselló's failure to meet his burden.

When an employee uses his personal vehicle during his employment, the vehicle may be considered a "tool of the trade." *See Guan Ming Lin v. Benihana Nat'l Corp.,* 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) (stating that "[v]ehicles such as bicycles, motorcycles, and mopeds are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment."). Here, the Parties do not dispute that Plaintiff Matías-Rosselló used his personal vehicle during his employment with FOT to carry out his delivery duties. *See* Docket No. 37 at pg. 3 and Docket No. 44 at pg. 5. The Parties, however, disagree as to the reasonable reimbursement method for the expenses related to the use of

that particular "tool of the trade."

On the one hand, Defendant FOT argues that its $1 per delivery reimbursement is a reasonable approximation of its driver's expenses. Docket No. 37 at pgs. 3, 8. For his part, Plaintiff Matías-Rosselló argues instead that because Defendant FOT did not keep records of its driver's actual expenses it should have used the IRS' business standard mileage rate.  Docket No. 44 at pgs. 13-14. But prior to inquiring into the reasonableness of the reimbursement method employed by FOT, the Court must first consider whether Plaintiff Matías-Rosselló has set forth evidence to show that his expenses while using his vehicle during his employment drove his pay below the FLSA's minimum wage.

Defendant FOT has produced evidence to show that it reimbursed Plaintiff Matías-Rosselló as follows: (1) $3,187.00 for the 3,126 deliveries that he made while working at the Mayagüez Store; (2) $93.00 for the 74 deliveries that he made while working at the Ponce Store; (3) and $173.00 for 170 deliveries that he made while working at the Yauco Store. *See* UF ¶ 13. The crux of Defendant FOT's argument in support of

its request for this Court to grant summary judgment in its favor is that Plaintiff Matías-Rosselló has not provided any evidence to show FOT's $1 per delivery reimbursement was unreasonable and therefore that his vehicle related expenses cut into his minimum wage. While Plaintiff Matías-Rosselló's Complaint includes allegations to the effect that Defendant FOT's purported failure to adequately reimburse him for his vehicle expenses has precluded him from getting paid the minimum wage, *see* Docket No. 1 at 4, 17, 29, 38, 41, 43, 77, 81, 85, 88, 90, and 108, the record as a whole and his Opposition to Defendant FOT's Motion for Summary Judgment do not direct this Court to evidence showing his vehicle related expenses and how they cut into his minimum wage.

Plaintiff Matías-Rosselló's response concerning the lack of evidence to prove his claim is that Defendant FOT was responsible for keeping track of his vehicle expenses, and because it failed to do so, it was unable to reimburse him his actual expenses. *See* Docket No. 44 at pg. 11. Therefore, he argues, FOT should have used the IRS' business standard mileage rate as the appropriate reimbursement method and

cites to Section 30c15 of the U.S. Department of Labor's Field Operations Handbook ("DOL Handbook") in support of this proposition. *See* Docket No. 63 at pgs. 4-5. Additionally, Plaintiff Matías-Rosselló points the Court to his "additional facts" which show examples that certain round-trip deliveries were between 7 to 8 miles. PASMF ¶¶ 31-33. [7]  He does so to show that when those distances are plugged into the IRS' business standard mileage rate formula, the reimbursement rate that appears is higher than the one offered by Defendant FOT. *See e.g.,* Docket No. 44 at pgs. 14-15. However, Defendant FOT posits that it was not obligated to adopt the IRS' business standard mileage rate, and that it could instead adopt a reasonable approximation reimbursement method, which is what it did here when it adopted the $1 per delivery in addition to the $7.25 per hour wage. Plaintiff Matías-

---

[7] The admission of these estimates was a point of contention for the Parties. For our analysis, the Court assumes, without deciding, that the facts pertaining to the trip distances are properly before the Court. However, for the reasons explained throughout this Omnibus Opinion and Order, their consideration ultimately does not save Plaintiff Matías-Rosselló's claim.

Rosselló's argument appears to drive at the reasonableness of Defendant FOT's reimbursement methodology. To address this argument, the Court must focus its inquiry on a spiderweb of FLSA regulations and provisions.

The Court's starting point is, as noted above, § 531.35. That regulation, in turn, references 29 C.F.R. § 531.32(c), which cross-references 29 C.F.R. § 778.217. And § 778.217 addresses the matter regarding reimbursement for expenses. Pertinent to our discussion is § 778.217(c)(2)(1), for that regulation sets the contours for a "reasonable" reimbursement method. The same states that,

> (2) [a] reimbursement amount for an employee traveling on his or her employer's business is per se reasonable, and not disproportionately large, if it: (i) Is the same or less than the maximum reimbursement payment or per diem allowance permitted for the same type of expense under 41 C.F.R. subtitle F (the Federal Travel Regulation System) or IRS guidance issued under 26 C.F.R. 1.274-5(g) or (j); and (ii) otherwise meets the requirements of this section.

29 C.F.R. § 778.217(c)(2)(i).

In addition to the regulations and provisions cited above, section 30c15 of the DOL Handbook addresses car expenses when an employee uses his personal vehicle on employer business, such as is the case here. Plaintiff Matías-Rosselló relies on this section in support of his argument that for Defendant FOT to have complied with the FLSA it should have either kept track of its employees' expense records or reimbursed him at the IRS standard business mileage rate. Section 30c15 states in pertinent part that "[a]s an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, 'Business Use of a Car' may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes." U.S. Dep't of Labor, Field Operations Handbook § 30c15, https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch30.pdf. The First Circuit has recognized the DOL Handbook as persuasive, although not binding. *See Newman v. Advanced Tech. Innovation Corp.*, 749 F.3d 33, 37 (1st Cir. 2014).

The Court also points out that on August 31, 2020, the U.S. Department of Labor issued Opinion Letter FLSA-2020-12 ("DOL Letter") which addressed head on the reasonableness of vehicle related expenses in compliance with the FLSA's minimum wage requirements.[8] That DOL Letter concluded that,

> [1] its regulations permit reimbursement of a reasonable approximation of actual expenses incurred by employees for the benefit of the employer by any appropriate methodology; [2] the IRS business standard mileage rate is not legally mandated by WHD's regulations but is presumptively reasonable and [3] reimbursement for fixed and variable vehicle expenses hinges on whether the cost at issue primarily benefits the employer.

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2020-12 (Aug. 31, 2020).

It is worth mentioning as well that opinion letters, such as this DOL Letter, are "interpretations contained in policy

---

[8] It appears that the DOL Handbook has not been revised since the issuance of the DOL Letter.

statements, agency manuals, and enforcement guidelines, all of which lack the force of law—[and] do not warrant *Chevron*-style deference." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). Accordingly, interpretations rendered by way of opinion letters are "entitled to respect . . . but only to the extent that those interpretations have the 'power to persuade.'" *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Here, none of the Parties have raised the matter as to whether § 531.35, the main regulation at issue in this case is ambiguous. This would shed light on the level of deference, if any, that we should afford to the DOL Handbook and the DOL Letter. The ambiguity issue was discussed at length in two cases out of the Southern District of Ohio that reached different outcomes. In *Bradford v. Team Pizza, Inc.*, No. 1:20-cv-00060, 2021 WL 2142531, at *11 (S.D. Ohio May 26, 2021)[9], that

---

[9] *See report and recommendation adopted* 2021 WL 4860600 (S.D. Ohio Oct. 19, 2021). It is also worth mentioning that, this matter was certified for immediate appeal under 28 U.S.C. § 1292(b) because the question raised regarding the reimbursement of expenses "incurred by pizza delivery driver employees" as it concerns the FLSA, "involves a controlling

court held that "there is no genuine ambiguity of the term 'reasonable approximation' [as used in § 778.217] and decline[d] to consider the authorities of the FOH or DOL Opinion Letter for further guidance." However, in *Hatmaker v. PJ Ohio, LLC,* No. 3:17-cv-146, 2019 WL 5725043, at *4-7 (S.D. Ohio Nov. 5, 2019), another judge from that court held that § 531.35 was ambiguous and therefore deferred to the DOL Handbook.

Albeit the limited guidance and differing opinions issued by sister courts regarding this matter, we are persuaded by the reasoning employed in *Bradford.* The analysis employed in *Bradford* shows that § 531.35 is not ambiguous and that the regulation it ultimately cross-references, to wit, § 778.217, "not only contemplates a reimbursement at less than the IRS rate, *see* § 778.217(c)(2)(i), it also explains that a reimbursement rate that is disproportionately large is not reasonable." *Bradford,* 2021 WL 2142531, at *10. Therefore,

---

question of law, as to which there is a substantial ground for difference of opinion, and an immediate appeal[,] is warranted to "advance the ultimate termination of the litigation." *See Bradford v. Team Pizza, Inc.,* No. 1:20-cv-00060, 2020 WL 672653 (S.D. Ohio Mar. 7, 2022).

since § 531.35 is not ambiguous, the Court need not defer to
the DOL Handbook or the DOL Letter. Even if this Court were
to lean on the reasoning provided in *Hatmaker*, we note that
the *Hatmaker* decision was issued prior to the DOL Letter and,
in any event, we would find that the DOL Letter provides the
most recent, complete, and thorough analysis of the matter at
hand. *See Bradford v. Team Pizza, Inc.*, No. 1:20-cv-00060, 2021
WL 4860600 at *2 (S.D. Ohio Oct. 19, 2021) (finding the
reasoning in *Kennedy v. Mountainside Pizza, Inc.*, No. 19-cv-
1199, 2020 WL 5076756 at *4-5 (D. Colo. Aug. 26, 2020) that §
531.35 is not genuinely ambiguous to be compelling, but
noting that even if that regulation was ambiguous, "the
August 2020 DOL Opinion Letter is the reasonable agency
interpretation that would be entitled to controlling weight.").
Moreover, the DOL Letter does not appear to be inconsistent
with the FLSA's regulations.

Lastly, we note that while the interpretive case law
regarding the reimbursement issue and § 531.35 has ensued a
patchwork of rulings, several courts have held that a
reasonable reimbursement mechanism is not limited to

tracking actual expenses or the IRS' business mileage rate, for they have also reached the conclusion that a reasonable approximation of expenses is allowed in view of the FLSA's regulatory framework. *See Blose v. Jarinc, Ltd.*, No. 1:18-cv-2184, 2020 WL 5513383, at *2 (D. Colo. Sept. 14, 2020) (holding that "as a matter of law, an employer may reasonably approximate vehicle expenses when reimbursing its employees."); *Kennedy,* 2020 WL 5076756, at *6 (holding that "defendants are permitted to 'reasonably approximate' Plaintiff's vehicle-related expenses" and that "[t]he IRS standard mileage rate may be probative of the reasonableness of Defendants' reimbursement of plaintiffs expenses but defendant is not required to reimburse plaintiff at the IRS standard mileage rate."); *Wass v. NPC Intern, Inc.*, 688 F. Supp. 2d 1282, 1284-86 (D. Kan. 2010) (concluding that after reviewing the applicable regulations, *i.e.*, § 531.35, § 531.32(c) and § 778.217, the same "also permit an employer to approximate reasonably the amount of an employee's vehicle expenses without affecting the amount of the employee's wages for purposes of the federal minimum wage law.")

Having rehearsed and considered the applicable regulations and provisions, coupled with the DOL Handbook and DOL Letter, we hold that Defendant FOT did not have to track its employees' actual expenses and could have employed a "reasonable approximation" reimbursement method. Moreover, we add that, while the IRS' business standard mileage rate provides a national average of costs implicated in the maintenance of a vehicle and was labeled by the DOL Letter as *per se reasonable*, it ultimately does not provide evidence as to Plaintiff Matías-Rosselló's expenses and how they cut into his minimum wage. The threshold question here is whether Defendant FOT's reimbursement method cut into Plaintiff Matías-Rosselló's wage. It is the Court's understanding that Plaintiff Matías-Rosselló's has not proffered evidence to answer that question in the affirmative.

As a final note, we mention that during the Hearing and in its briefs, Defendant FOT repeatedly harped on Plaintiff Matías-Rosselló's lack of evidence regarding his *actual* expenses. To be clear, Plaintiff Matías-Rosselló was not expected to provide detailed evidence of his expenses. He

was, however, at least expected to provide estimates of his expenses. *See Orth v. J & J & J Pizza, Inc.*, No. 19-cv-10709, 2020 WL 1446735, at *3 (D. Mass. Mar. 25, 2020) (explaining that plaintiff was "not required to provide the exact amount of his actual expenses."); *Benton v. Deli Mgmt., Inc.*, 396 F. Supp. 3d 1261, 1274-75 (N.D. Ga. 2019) (citing cases); *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-cv-7850, 2016 WL 8650464, at *15 (S.D.N.Y. Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 1194682 (S.D.N.Y. Mar. 30, 2017) (noting that even though the plaintiff did not provide any receipts or documents in support of the tools of the trade purchases, the Court could "accept Plaintiff's statement, made under penalty of perjury, that he was required to purchase the specified equipment, and that the costs were the amounts stated."). Even though common sense could dictate that $1 per delivery will not cover vehicle related expenses, this is not a deduction that should be made by the Court, for the Court should have been placed in a position to evaluate the evidence. The fact of the matter is that Plaintiff Matías-Rosselló has not provided any evidence—such as a showing of actual or approximate

expenses—and therefore the Court's inquiry must end here. For even in cases in which a plaintiff overcomes this hurdle, and the factual question concerning the reasonableness of the reimbursement method is left to the jury, at that juncture, plaintiffs have proffered at least an approximation of expenses. *Perrin v. Papa John's Int'l Inc.*, 114 F. Supp 3d. 707, 721-22 (E.D. Mo. 2015) (first acknowledging that "Plaintiffs' own expert offers an alternative rate that Plaintiffs contend is a reasonable, albeit conservative, approximation of their expenses for minimum wage purposes[,]" and then concluding that it would "leave to the jury the determination of whether defendants' reimbursement rate reasonably approximated plaintiffs' vehicle expenses.").

Simply put, without at least an estimate of expenses, there would be no guidepost to determine the reasonableness of a reimbursement rate. While it could very well be within the realm of possibilities that Defendant FOT's reimbursement rate was unreasonable or that the IRS' business standard mileage rate—or any other method for that matter—would have best satisfied the reasonableness requirement, here,

Plaintiff Matías-Rosselló did not produce evidence that would satisfy his burden. As such, Defendant FOT's request for summary judgment as to Counts I and II is GRANTED.

### b.  Count III: Unjust Enrichment Under Puerto Rico Law

The Court has supplemental jurisdiction to hear state-law claims when, and if, the federal court has original jurisdiction in the action and the claims "form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the Court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3); *see also Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011). Having dismissed all of Plaintiff Matías-Rosselló's claims over which the Court has original jurisdiction, in its discretion, the Court will not exercise its supplemental jurisdiction over the pendant state-law claim. Plaintiff Matías-Rosselló's unjust enrichment claim under Puerto Rico law is therefore DISMISSSED WITHOUT PREJUDICE.

### III. Defendant FOT's Motion to Dismiss

Defendant FOT has also moved to dismiss Plaintiff Matías-Rosselló's collective and class action claims. The Motion to Dismiss was premised on Plaintiff Matías-Rosselló's failure to specify in the Complaint that it was seeking conditional certification pursuant to 29 U.S.C. § 216 and solely referencing his intent to move for class certification pursuant to Federal Rule of Civil Procedure 23.[10] Defendant FOT emphasizes that, in any event, the collective and class action claims should be dismissed because he has failed to timely move for certification.[11]

---

[10] The Court acknowledges that, albeit failing to reference § 216 in the Complaint, throughout the course of this litigation Plaintiff Matías-Rosselló has clarified that his FLSA claims were filed pursuant to § 216.

[11] The term "certification" and its effects have been referenced by the Parties as if it applied equally when discussing both the class action claim and the collective action claims. The Court takes a moment to note that "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 74 (2013). The reason being that "'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees ... who in turn become parties to a collective action only by filing written consent with the court." *Id.* at 75.

The Court finds that dismissal of the collective and class action claims is warranted here. But the Court reaches that conclusion because we find that those claims are moot since we have dismissed all of Plaintiff Matías-Rosselló's individual claims as noted in our discussion regarding Counts I-III of the Complaint.[12] *Cf. Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 73 (2013) (while addressing a suit under the FLSA in which the named plaintiff had not moved for "conditional certification," the Supreme Court held that because the named plaintiff's individual claim had become moot, the collective action claims advanced in the suit were also moot given that "[plaintiff] lacked any personal interest in representing others in th[e] action," and underscored that

---

Meanwhile, "putative class members [pursuant to Rule 23] do not become parties until after certification[.]" *Waters v. Day & Zimmermann NPS, Inc.,* 23 F.4th 84, 91 (1st Cir. 2022). And when a class is certified "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by [the named plaintiff]." *See Sosna v. Iowa,* 419 U.S. 393, 399 (1975).

[12] Moreover, the Court notes that even after the Hearing and to date, the record is devoid of any attempts by Plaintiff Matías-Rosselló to move for certification of the proposed class under Rule 23 or to begin the "opt-in" process that a collective action calls for.

"the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied.").

Accordingly, the collective and class action claims advanced in the Complaint are DISMISSED WITHOUT PREJUDICE.

## IV. Conclusion

In short, the Court hereby **GRANTS** Defendant FOT's Motion for Summary Judgment and Motion to Dismiss at Docket Nos. 36 and 37. Specifically, the Court:

- **DISMISSES WITH PREJUDICE** Counts I and II of the Complaint as to Plaintiff Matías-Rosselló;

- **DISMISSES WITHOUT PREJUDICE** Count III of the Complaint as to Plaintiff Matías-Rosselló;

- **DISMISSES WITH PREJUDICE** all claims against Epoch as to Plaintiff Matías-Rosselló;

- **DIMISSES WITHOUT PREJUDICE** all claims against Clutch; and

- **DISMISSES WITHOUT PREJUDICE** all collective action
  and class action claims of the Complaint.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March 2022.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES DISTRICT COURT JUDGE